HUTCHINSON v. SPERRY et al.

(Circuit Court of Appeals, Third Circuit. July 8, 1919. Rehearing Denied December 12, 1919.)

No. 2416.

1. CORPORATIONS ⬥116—CONSIDERATION FOR SALE OF STOCK.

A contract by which a minority stockholder sold stock having a par value of $497,000 for $250 cash and $121,500.15 to be paid from dividends upon stock, in hope that buyer could induce his brother who was majority stockholder, to declare larger dividends, etc., held valid, unless effected by fraud.

2. CORPORATIONS ⬥116—SALE OF STOCK—FRAUD.

Contract for sale of stock to majority stockholder's brother was not void for fraud, because corporation declared large dividends soon after payment was completed, where such dividends were earned subsequent

to contract's execution, nor because of alleged wrongful handling of certain assets by majority stockholder, where there was no evidence that buyer knew of such acts.

3. CORPORATIONS ☞116—SALE OF STOCK—FRAUD—DUTY TO INVESTIGATE.

A sale of corporate stock cannot be set aside because of fraudulent misrepresentations regarding corporation's business, where seller's experiences should have put him upon inquiry as to true state of corporation's affairs, and he was in a position to have ascertained true facts.

Appeal from the District Court of the United States for the District of New Jersey; Thomas G. Haight, Judge.

Bill by Shelley B. Hutchinson against William M. Sperry, Kate M. Sperry, the Farmers' Loan & Trust Company of New York, executor and trustee of the estate of Thomas A. Sperry, deceased, and the Sperry & Hutchinson Company. From a decree dismissing the bill, complainant appeals. Affirmed.

William Mayo Atkinson, of Elizabeth, N. J. (Herbert A. Trebing, of New York City, of counsel), for appellant.

Crisp, Randall & Crisp, of New York City, and Edward S. Atwater, Jr., of Elizabeth, N. J. (W. Benton Crisp, of New York City, and Robert H. McCarter, of Newark, N. J., of counsel), for appellee William M. Sperry.

Frederick Geller, of New York City, and William H. Osborne, of Newark, N. J. (George S. Mittendorf, of New York City, of counsel), for appellees Goodrich and another.

Before BUFFINGTON and WOOLLEY, Circuit Judges, and RELLSTAB, District Judge.

WOOLLEY, Circuit Judge. This action is in equity. It was brought on original and supplemental bills—dismissed by the decree—wherein the complainant averred three causes of action, which, though distinct in themselves, were, nevertheless, related in the relief sought from the several defendants.

The first cause of action which we find in the pleadings is against the defendant William M. Sperry personally to set aside a contract for the sale of stock of Sperry & Hutchinson Company, made between the complainant and that defendant on July 24, 1901, and to require William M. Sperry to account for all dividends and other payments made to him on account of the said stock after the date of the contract, on the allegation that the said contract is void because affected by fraud.

The second cause of action is asserted by the complainant as stockholder of Sperry & Hutchinson Company on behalf of himself and all others similarly situated, and is brought against Kate M. Sperry and the Farmers' Loan & Trust Company, executors and trustees of the estate of Thomas A. Sperry, deceased, to compel them to restore to the corporation certain sums of money which it is alleged Thomas A. Sperry unlawfully withdrew from the prior partnership of Thomas A. Sperry and the complainant, trading as Sperry & Hutchinson. The prayer for this relief is based on the assumption by the complainant

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

that his prayer for the annulment of the contract of July 24, 1901, and for his restoration to the status of stockholder, will be granted, and that, in consequence, he still is the lawful owner of that stock with a stockholder's right to maintain this action.

The third cause of action is based on a like assumption that the complainant still is a stockholder of the Sperry & Hutchinson Company and is brought on behalf of himself and all others similarly situated against William M. Sperry and the Executors of the Estate of Thomas A. Sperry, for an accounting of all dividends or other payments made to them out of the assets of the corporation on account of the stock standing in the name of William M. Sperry and Thomas A. Sperry after the sale by the complainant of his stock on July 24, 1901.

These several causes of action, with their respective prayers for appropriate relief, involve charges of fraud and misconduct on which the complainant seeks to hold William M. Sperry and the executors and trustees of the estate of Thomas A. Sperry as trustees ex maleficio. The evidence on these issues may be logically divided into two periods, namely: Evidence of facts and transactions which occurred prior to July 24, 1901, the date of the contract for the sale of the complainant's stocks; and evidence of facts and transactions which occurred thereafter.

Because of the feeling displayed by the parties and the vigor with which they prosecuted and defended this action, the evidence reached this court in a somewhat confused state. As a proper decision in this case rests essentially on a correct understanding of the facts, it is of first importance that the controversy be reduced to simple terms. We shall avail ourselves of the clear statement made by Judge Haight in delivering the opinion of the court below as presenting the facts on which, in the main, the decision of the District Court was grounded, and on which we shall base our decision on appeal:

"It seems necessary that the facts, as I find them, should be recited with considerable detail. In the early part of 1896 the plaintiff engaged in the trading stamp business in the city of Jackson, Michigan. He claims that he was the originator of that business in this country, although this is disputed. But whether he was or not seems immaterial. In January, 1897, he entered into partnership with Thomas A. Sperry and one Jackson to conduct the business in a broader field. This partnership continued for about a month, when Jackson retired. Thereafter, and until October of 1900, the business was conducted by Thomas A. Sperry and the plaintiff, as partners, under the firm name of Sperry & Hutchinson. It steadily grew, and, at the time last mentioned, was quite extensive. In the meantime, William M. Sperry, a brother of Thomas A., and one Alexander had also engaged in the same business, under the name of Sperry & Alexander. They operated, however, in a different field than Sperry & Hutchinson. One Wiedenbach, a brother-in-law of Thomas A. Sperry, had likewise engaged in the business in the same way. Sperry & Hutchinson had a financial interest in and shared in the profits of both of the latter concerns. In November, 1897, a corporation known as the International Trading Stamp Company was formed, which took over the business theretofore conducted by Sperry & Alexander, Wiedenbach and some of the business of Sperry & Hutchinson. This corporation did business until the latter part of March, 1899, when, being in financial difficulties, it sold all of its assets to Sperry & Hutchinson, they, in turn, agreeing to pay off and discharge its debts and obligations. That arrangement was actually consummated in September, ot 1899. Thomas A. Sperry was the financial man and dominating genius of the firm. From the time that the partnership was formed until the latter part of

1899, the plaintiff was engaged in developing the business in various parts of this country and Australia. In the latter part of 1897 he went to San Francisco and from thence, later, to Australia, and did not return, except for one short visit, to the main office of the company in New York, until some time in 1899. In October of 1900, at the suggestion of Thomas A. Sperry, a corporation known as The Sperry & Hutchinson Company, one of the defendants in this suit, was organized under the laws of the State of New Jersey, to carry on the business which had theretofore been conducted by the partnership of Sperry & Hutchinson. Thereupon, to carry out the purposes for which the corporation was formed. the partnership transferred to it practically all its assets and good will. The authorized capital stock of the corporation was $1,000,000, divided into shares of $100 each, of which 4,985 shares were issued to each of the partners, and 10 shares each to three employés of the firm, a Miss Hirst, a bookkeeper, a Mr. Bailey and William M. Sperry, one of the defendants. The plaintiff and Thomas A. Sperry, under the partnership, which was one at will, had equal shares and were entitled to an equal division of the profits. Within a few months after the corporation was formed, tne plaintiff. at the suggestion of Thomas A. Sperry and upon the latter's promise to do likewise, disposed of fifteen of his shares to a third party. Subsequently these shares were acquired by Thomas A. Sperry. It is suggested that this was done by Thomas A. Sperry surreptitiously, to vest the absolute control of the corporation in himself, and to eliminate the plaintiff from any connection with it. It seems unlikely, however, that he should have resorted to such a course to accomplish that purpose, because the three persons to whom shares had originally been issued, outside of the partners, and who thus with Thomas A. Sperry had the controlling interest in the corporation, were unquestionably under his control and subject to his will, two of them being relatives. Prior to the formation of the corporation, the plaintiff had a drawing account, as well as a division of the profits, and had actually received by way of profits from $40,000 to $50,000. Directly after the corporation was organized, the salary of Thomas A. Sperry, as president of the company, was fixed at $8,000 a year, but the plaintiff, who was vice-president, was given no salary, and the drawing account which he had theretofore been in receipt of was discontinued. At about this time, and possibly on account of the matters just referred to, the relations between the former partners became strained and unpleasant. The plaintiff endeavored to secure a salary, but could not' do so. He was called upon to do very little work, and, to a large extent, was eliminated from the conduct of the business. In January of 1901, however, a dividend on the stock of the corporation was declared and paid, plaintiff's share being $9,940. On July 24, 1901, the plaintiff, after having unsuccessfully tried to dispose of his stock in the corporation to other persons. one of whom was Thomas A. Sperry, entered into an agreement with the defendant, William M. Sperry, to sell the stock to him at the rate of $24.50 per share, or in all, the sum of $121,765. Under the agreement, the stock was to be paid for in the following manner: $250 upon the execution of the agreement, and the balance by the dividends which might be 'earned, declared and paid by the corporation on the stock.' In arriving at the purchase price, interest on the deferred payments was taken into account and fixed, for that purpose, at $10,-000. The circumstances surrounding the execution of this agreement will be referred to in more detail later. The agreement was consummated, the last payment on the purchase price having been made on September 17, 1904, and the stock certificates were delivered on October 1st of the same year. The plaintiff took no part in the management of the company after the agreement was signed, but immediately left New York, where he had been residing, and returned to his former home in Ypsilanti, Michigan, where he engaged in other businesses. In 1912 he brought suit against Thomas A. Sperry, in the Supreme Court of New York, for an accounting of the partnership dealings and transactions, particularly with reference to a sale of the business which the partnership had carried on in the State of Michigan and at Atlanta, Georgia. In this action he was defeated. Thomas A. Sperry died on September 2, 1913, and letters testamentary were granted to his widow, Kate M. Sperry, and the Farmers' Loan and Trust Company, two of the defendants in this suit. On

September 11, 1915, the original bill in this case was filed against William M. Sperry, the purpose of which was to secure an annulment of the before mentioned contract of July 24, 1901, the retransfer of the shares of stock which the plaintiff had sold to William M. Sperry, pursuant thereto, and to recover from the latter all the dividends which he had received on the stock. Subsequently, on February 3, 1916, a supplemental bill was filed, by leave of this Court, against William M. Sperry, The Sperry & Hutchinson Company and the executors of the estate of Thomas A. Sperry, in which the same relief was sought against William M. Sperry as in the original bill, and, in addition, that he and the executors of the estate of Thomas A. Sperry repay to the Sperry & Hutchinson Company certain alleged unlawful withdrawals of money by them from the company, and that the company pay to the plaintiff such part of such withdrawals as ought properly to have been declared as dividends upon the stock which the plaintiff had sold to William M. Sperry. The bills allege, and the plaintiff offered evidence to prove, that between the time the plaintiff had left New York for the Pacific Coast in the latter part of 1897 and his return in 1899, Thomas A. Sperry had withdrawn from the funds of the partnership and those of the International Trading Stamp Company moneys amounting in the aggregate to about $40,000 over and above the amount which he was lawfully entitled to draw—although the evidence does not show the exact amount drawn from either concern, or, for that matter, from both— that he had concealed the withdrawals by fraudulent entries in the books of account; that subsequent to the time of these withdrawals, but before the contract in question was entered into, William M. Sperry was advised of them by the bookkeeper, and that the first knowledge that the plaintiff had of the withdrawals was shortly before the original bill was filed. The supplemental bill alleges, and the evidence establishes that in June, 1905, there was distributed between William M. Sperry and Thomas A. Sperry approximately $500,000 in cash and property, which represented the accumulated surplus of the corporation that had been carried by Thomas A. Sperry in a so-called 'trustee account.' These are the alleged illegal withdrawals which the supplemental bill seeks to have returned to the corporation. It is further claimed that the Detroit business of the partnership was not transferred to the corporation in the original bill of sale, but that, a short time thereafter, it was taken over and operated by the corporation for some time, without the knowledge of the plaintiff. The defendant William M. Sperry denies any knowledge whatsoever of any illegal withdrawals by his brother, Thomas A. Sperry, from the funds of the partnership, and the other defendants, so far as they were able, without the testimony of the person accused of the withdrawals, have endeavored to prove that no such withdrawals were, in fact, made. The case presents several questions which I will discuss in their logical sequence."

The pivotal matter in this controversy is the transaction by which the complainant sold his stock in Sperry & Hutchinson Company to William M. Sperry. The contract by which this sale was effected, standing alone and viewed without regard to the circumstances surrounding it, appears to be such an unusual one that doubt of its validity is naturally suggested because of an inadequacy of consideration seemingly so gross as to give the impression that it could not have been brought about except by deceit or imposition. Phillips v. Pullen, 45 N. J. Eq. 831, 18 Atl. 849. By its bald terms it appears that William M. Sperry obtained the complainant's stock of the par value of $497,000 for $250; or stated differently, that he paid but $250 for stock, which, though worth less than its par at the time it was sold, later, had a value in excess of par. But $250 was not the full contract price, though it was all the money which William M. Sperry paid from his own resources. The balance of the contract price ($121,515) was paid as and when dividends on the stock so sold were declared

and paid. This also looks suspicious when viewed alone, for it would seem that Hutchinson's stock was paid for with his own money.

[1] The circumstances affecting the validity of this contract with its apparently inadequate consideration, as we regard them, are these:

The complainant found himself a minority stockholder in a corporation in which Thomas A. Sperry was the majority stockholder. The business of the corporation had been tolerably profitable and dividends had been declared on the stock, of which the complainant got his share. But there came a time in the affairs of the corporation, which materially darkened its prospects. The peculiar business of the corporation had grown unpopular in trade circles and statutes had been enacted in many states forbidding its transaction. Thomas A. Sperry drew a salary not disproportionate to the volume of the corporation's business, while the complainant was allowed no salary. Aside from receiving no salary, and from being a minority stockholder with its consequent disadvantages—though it does not appear that Thomas A. Sperry used his stock control unlawfully—the complainant found the prospects of the business, because of legislative antagonism, speculative, if not doubtful. He endeavored to sell his stock, first to Thomas A. Sperry, and later to persons outside the corporation. Failing in this, and evidently as a last resort, he proposed the sale of his stock to William M. Sperry, who, though a brother of Thomas A. Sperry, the president of the corporation, held a position in the corporation no higher than that of clerk. This proposition did not appeal to William M. Sperry for several reasons, the principal one being that he had no money with which to make the purchase. The complainant, however, persisted in his endeavor to persuade William M. Sperry to buy his stock, and, in fact, made the purchase by William M. Sperry possible by arriving in the negotiations at the very unusual terms of the contract, whereby nearly all the consideration for the purchase should come from dividends paid on the very stock that was sold. In other words, the complainant financed William M. Sperry as a purchaser, a transaction not unusual in difficult business situations, believing, doubtless, that William M. Sperry as a minority stockholder could induce his brother, Thomas A. Sperry, the majority stockholder, to declare dividends more quickly and in larger amounts than he could, if he continued to hold the stock. With this arrangement, easy of performance by William M. Sperry as it would be in any event, and immensely profitable to him as it afterward turned out to be, the complainant was satisfied, not only in its inception, but throughout its performance and in its ultimate completion by the payments made on the purchase price from dividends declared in the succeeding years. When the last payment was made on account of the consideration in 1904,—this very fact showing the remarkable prosperity of the corporation,—the complainant turned over the stock to William M. Sperry without objection, except as to a matter of interest which is not relevant to this issue. The contract was unusual; so was the situation. But as the contract was entered into, manifestly on the initiative of the complainant in full possession of his faculties and with an intelligent regard to his own interests, it must be held valid, if not af-

fected by fraud preceding its execution. The complainant, however, maintains that he was induced to enter into the contract for the sale of his stock for a consideration grossly disproportionate to its true value, because of fraud of William M. Sperry, afterward disclosed.

[2, 3] This allegation of fraud is based on the following circumstances: After the complainant had contracted for the sale of his stock, many of the state statutes which had been enacted in opposition to business of the character of this corporation were declared unconstitutional, and as a result the business of the corporation grew by leaps and bounds to prodigious proportions. The business transacted by the corporation in 1901, the year of the contract, was about $650,000; in 1902, it increased to $1,100,000; in 1903, to $2,800,000; and in 1904, the year the contract was completed and the stock turned over, to $4,437,000. The dividends from the business during the three years in which the contract ran, declared on the stock purchased, were sufficient to enable William M. Sperry to pay the full contract price for the stock, amounting (with the $250 cash) to $121,765.

Aside from these dividends, there had accumulated a surplus which was divided among the stockholders eight months after the contract had been completed by the transfer of the stock, in which division William M. Sperry received $223,000 as his share. The complainant contends that this large distribution was made possible only because the money had been secreted and knowledge of it had been kept from him, and that, in consequence, when he contracted to sell his stock he was fraudulently kept in ignorance of its value by William M. Sperry. But we find no evidence which shows that any part of this surplus, thus distributed after the contract had been performed, existed at the time the contract was entered into on July 24, 1901. In fact, the evidence seems to lead to the conclusion that, if not all of it, certainly a greater part of it was accumulated during the prosperous year of 1904. If the contract was valid when it was made, it continued to be valid during the accumulation and distribution of this substantial surplus. There is certainly nothing to indicate that this sum was accumulated for the purpose of defrauding the complainant, or that William M. Sperry had any knowledge that it had been accumulated until shortly before its distribution in June, 1905. Finding no fraud occurring after the execution of the contract, let us inquire what transpired before its execution.

The complainant maintains that fraud existed before the contract was entered into and specifies, first, illegal withdrawals and concealment by Thomas A. Sperry of funds from the partnership and the International Trading Stamp Company; and second, the alleged transfer before the date of the contract of the Detroit business of the partnership to the corporation without the complainant's knowledge. In considering these allegations of fraud, several questions arise.

The complainant maintains that when he was a member of the firm of Sperry & Hutchinson and before he agreed with his partner Sperry to turn over the firm assets to the corporation in consideration of the corporation's stock to be delivered to each in equal shares, Thomas A. Sperry had withdrawn from the partnership and converted to his own

use from $25,000 to $40,000 more of the partnership funds than he was entitled to. Although this alleged conduct occurred nearly twenty years ago, the complainant avers that knowledge of it reached him only recently. He maintains, therefore, that there should be a redistribution of the stock based on the actual interests of the partners in the partnership funds, as determined by the abstractions of a part thereof by Thomas A. Sperry, whereby the complainant, under such distribution and on having his stock restored to him on decree of this court annuling his contract of sale with William M. Sperry, would be placed in stock control of the corporation.

There is substance in this contention if he has established two facts: First, that Thomas A. Sperry actually made illegal withdrawals of partnership funds; and second, that William M. Sperry had knowledge of that fact. On the first matter, we are not satisfied from the evidence that Thomas A. Sperry did make illegal withdrawals from partnership funds; and on the second, we are quite satisfied from the evidence, that if he did, William M. Sperry had no knowledge of it, and was not, therefore, bound to reveal something he did not know. Knowledge of such fact had by William M. Sperry and his silence with respect to it on entering into the contract for the purchase of the stock, constitute the suppressio veri on which the complainant mainly relies in proof of fraud to avoid the contract. In this we think he has failed. But aside from William M. Sperry's knowledge as to the alleged misconduct of his brother and from his duty to reveal it to the complainant when about to purchase his stock, we are convinced from the complainant's own story, that his difficulties with Thomas A. Sperry were such as to have put any reasonable man upon inquiry as to the true state of the corporation's affairs and of the partnership affairs preceding the corporation, and that he was in possession of the means and had at hand the opportunity to pursue an inquiry to a point where the precise facts would come into his possession. Wood v. Carpenter, 101 U. S. 135, 141, 25 L. Ed. 807.

We do not find it necessary to discuss the transaction by which the corporation acquired the Detroit business. It is sufficient to say that this transaction had no effect on the contract for the sale of stock to William M. Sperry, because the business was not an asset of the corporation, and, therefore, did not affect the value of the complainant's stock.

In disposing of this case, to which we have given serious and deliberate consideration, we find it difficult to add anything to the opinion of the learned trial judge. We not only concur with all his conclusions, but find ourselves in entire accord with the reasoning by which he reached them. The complainant has failed in this litigation, not because his counsel did not properly or sufficiently present the law—indeed, his counsel's briefs are an encyclopedic exposition of the law, showing great labor conscientiously performed. He failed because the facts on which he built his case do not show that he has been wronged in the sale of his stock. For his misfortune in disposing of his stock on the eve of its great enhancement in value, the law affords no relief.

The decree below is affirmed.